UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| JOANN SPOTTED BEAR, a/k/a Mato Gleska Weyen, <br><br> Plaintiff, <br><br> vs. <br><br> MICHELLE POOR BEAR; JEAN WHIRLWIND HORSE; DEPART OF ADULTY OFFENDER FACILITY of the Oglala Sioux Tribe; HUMAN RESOURCES of the Oglala Sioux Tribe; DAKOTA LEGAL PLAINS; OGLALA SIOUX TRIBAL COUNCIL; OGLALA SIOUX COURTS; OGLALA SIOUX POLICE; JOHNSON DREAMER, Oglala Sioux HR Director; ALAN MOUSSEAUX, Oglala Sioux Vice President; OGLALA SIOUX TRIBAL DEPARTMENT OF CORRECTIONS; VERONICA BREWER RICHARDS; KEVIN CROSS; AUSTIN WATKINS; LISA ADAMS, Dakota Legal Plains Services; BETTY GOINGS, Tribal Court; FRANK STAR COMES OUT, Oglala Sioux Tribe; and JUDGE DILLON, OST Tribal Judge, <br><br> Defendants. | 5:24-CV-05009-CCT <br><br><br> **ORDER DENYING PLAINTIFF'S MOTION TO ADD DEFENDANT AND MOTION TO SUPPLEMENT AND 1915 SCREENING** |

Plaintiff, Joann Spotted Bear, filed a pro se civil rights lawsuit. Docket 1. Spotted Bear moved for leave to proceed in forma pauperis, which this Court granted. Docket 32. Spotted Bear filed an amended complaint, Docket 18, and eighteen supplements to her complaint, Dockets 7, 8, 9, 10, 11, 12, 14, 17, 19, 20, 21, 22, 24, 25, 27, 28, 29, 31. She also filed a motion to amend her

amended complaint, Docket 34, and a motion for leave to file a supplemental complaint, Docket 36.

## I.    1915 Screening

Spotted Bear's filings are disjointed, duplicative, and voluminous. For example, Spotted Bear included over ten copies of the same document throughout her filings. *See, e.g.*, Docket 7 at 1, 20, 48, 61; Docket 8 at 1; Docket 11 at 12, 85; Docket 17 at 13, 32, 108, 133; Docket 20 at 12. Her supplements also appear to largely be copies of documents that she provided to or received from other individuals or agencies. Thus, for the sake of efficiency, this Court will not include a citation to each duplicative page included in the record. Spotted Bear's handwriting is at times illegible; it is also somewhat unclear what claims Spotted Bear seeks to bring against which defendants.

Although pro se complaints must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), "[j]udges are not like pigs, hunting for truffles buried [in the record]," *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) (alterations in original) (quoting *Gross v. Cicero*, 619 F.3d 697, 702 (7th Cir. 2010)); *see also United States v. Sledge*, 108 F.4th 659, 669 n.3 (8th Cir. 2024) (citing *United States v. Stuckey*, 255 F.3d 528, 531 (8th Cir. 2001)). This Court attempts to address all the claims and causes of action alleged, but if Spotted Bear, in the over 1,600 pages of filings, intended to assert a claim that is not addressed, Spotted Bear may file an amended complaint asserting all of her claims. Going forward the Court is not going to wade through voluminous piecemeal supplements hunting for buried claims.

*See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a *short* and *plain statement* of the claim showing that the pleader is entitled to relief[.]" (emphasis added)).

This Court cautions that "an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) (citing *Washer v. Bullitt Cnty.*, 110 U.S. 558, 562 (1884)). Thus, an amended complaint would replace Spotted Bear's previously filed complaints and supplements, and all claims that Spotted Bear seeks to bring must be included in an amended complaint. If Spotted Bear files an amended complaint, she should specifically:

> (1) identify and name as a Defendant each individual who allegedly violated [her] constitutional rights; (2) explain how each individual personally violated [her] constitutional rights; (3) state in what capacity [she] is suing each Defendant (individual capacity, official capacity, or both); (4) [omitted as only applies to prisoners]; (5) state the injury [she] suffered as a result of each Defendant's alleged unconstitutional conduct; and (6) state what relief [she] seeks from the Court.

*Gray v. Does*, 2023 WL 7381414, at *2 (E.D. Ark. Oct. 30, 2023). If Spotted Bear chooses to file an amended complaint, it must comply with this Court's Local Rules and the Federal Rules of Civil Procedure, and she must file it within **thirty days from the date of this Court's screening order**. This Court also requests Spotted Bear either type the amended complaint or write so that her handwriting is legible.

### A.    Factual Background as Alleged by Spotted Bear

Spotted Bear is a member of the Oglala Sioux Tribe. Docket 1-1 at 1. The Oglala Sioux Tribe is a federally acknowledged Indian Tribal Entity. *Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs*, 89 Fed. Reg. 944, 946 (Jan. 8, 2024).

### 1.    Employment

On January 18, 2022, Spotted Bear was provisionally hired as a correctional officer with the Oglala Sioux Tribe Department of Corrections (DOC) at the Adult Offenders Facility (AOF) in Pine Ridge, South Dakota. Docket 7 at 2. In March of 2022, Spotted Bear was cleared for permanent employment. *Id.* at 3. Spotted Bear—along with several other Oglala Sioux Tribe officers—was selected to attend the Indian Country Corrections Officer Training Program offered by the Bureau of Indian Affairs (BIA) in Artesia, New Mexico. *Id.* at 31, 34–35. The training program was scheduled to run from July 10, 2023, through August 18, 2023. *Id.*

On July 12, 2023, and continuing throughout the training, Spotted Bear had trouble defecating and experienced stomach pain. *Id.* at 29. She was seen multiple times by medical staff at the training program, prescribed laxatives, and placed on medical restrictions. *Id.* at 27–29; Docket 8 at 2. On July 14, 2023, Spotted Bear was taken to the emergency room at Artesia General Medical Hospital. Docket 7 at 9; Docket 8 at 2. It was determined that she had a uterine cyst blocking her intestine, and she had emergency surgery to remove a uterine fibroid. Docket 7 at 9; Docket 8 at 2–3, 8. She was placed on medical

restrictions and given 10 mg of lactulose, which can cause a frequent need to use the bathroom. Docket 7 at 9, 26. On July 17, 2023, Spotted Bear was medically cleared to participate fully in all training programs. *Id.* at 25.

On July 18, 2023, the Oglala Sioux Tribe Human Resources Department emailed the Oglala Sioux Tribe Director of Corrections and attached a corrected authorization for release of information for all candidates to fill out. Docket 17 at 78, 85. Spotted Bear and the six other correctional officers from the Oglala Sioux Tribe were told to leave because their background checks were not done. Docket 7 at 5. On July 24, 2023, the DOC emailed the Justice Center distribution list advising candidates to turn in their background packets. Docket 17 at 78, 86–87.

On July 19, 2023, an AOF employee, Veronica Brewer, was sent to Artesia to pick up the seven Oglala Sioux Tribe officers. Docket 8 at 3. When Spotted Bear got to the car, Veronica told her to not stink up the car. *Id.* During the drive, fellow staff ridiculed, humiliated, and insulted Spotted Bear because of medical issues, which caused her to exude an odor. *Id.*; Docket 7 at 9. Spotted Bear requested numerous times that staff stop tormenting her. Docket 7 at 9. When the group was in Limon, Colorado, Spotted Bear called Lead Correctional Officer Sergeant Kevin Cross and described how she was being ridiculed, insulted, and humiliated; Cross advised here to hang in there because they were almost home. *Id.*

The next day, Spotted Bear again called Cross. *Id.* at 9–10. She also called Brent Plenty Bull, but he did not answer his phone. *Id.* at 10. She called

the AOF twice and told Cross that she was getting out of the car and walking home because Veronica had not attempted to stop the insults; Cross told her to stay in the car. *Id.* Spotted Bear continued on the trip, but the insults did not stop. *Id.*

When the group later stopped in Sidney, Nebraska, Spotted Bear got out of the car. *Id.* Veronica came over to Spotted Bear and asked her to go with her; Spotted Bear refused while crying. *Id.* Veronica left and returned with her supervisor, Director of Corrections Jean Whirlwind Horse, on the phone, but Spotted Bear claimed that she could not trust Veronica because she had not apologized. *Id.* Spotted Bear called Robin Tapio, and Tapio started a three-way phone call with her, Spotted Bear, and Jean. *Id.* at 6. Jean refused to send someone to pick up Spotted Bear because she willfully got out of the car and wanted to stay in Nebraska. *Id.* Spotted Bear found a ride back to Pine Ridge. *Id.* at 6–7. When she arrived, Spotted Bear was advised to go home for the weekend, and she contacted the employee assistance program because she expected to be fired. *Id.* at 6.

Spotted Bear was provided a "Notice of Intent to Terminate and Right to Pre-Termination Hearing" effective July 24, 2023, and signed by Cross. *Id.* at 1. The Notice informed her that the Oglala Sioux Tribe intended to terminate her employment for (1) abandonment of position, (2) creating or being involved in workplace violence, and (3) endangering the safety of fellow employees/clients. *Id.* A pre-termination hearing to be conducted by the lead correctional officer was set for July 25, 2023. *Id.*

6

Spotted Bear alleges that the termination was unfair because there was not a full investigation. *Id.* at 13; Docket 11-1 at 127. Michelle Poor Bear of the Oglala Sioux Tribe Department of Human Resources never gave a thorough statement of termination. Docket 18 at 3. Statements from four of Spotted Bear's co-workers were taken. Docket 7 at 13. Spotted Bear's statement was heard, but her letter was not added to the file of statements. *Id.* Cross informed her that posting on Facebook that officers were sent home because they did not have a background check gave the department a "black eye[.]" *Id.* at 6. Cross told Spotted Bear that she could never work at the AOF again and that she could not seek help from the Judiciary Court. *Id.* at 13.[1]

The Human Resources Personnel Action Notice shows that her termination was effective July 25, 2023, and she was paid $336.02, including a payout for annual leave. Docket 17 at 1, 78. On July 26, 2023, Spotted Bear appealed the decision of her pre-termination hearing. Docket 7 at 8. On July 27, 2023, Spotted Bear sought relief from the Oglala Sioux Tribal Council Law and Order Committee based on violations of whistleblower protection provisions and for negative treatment by co-workers resulting in her termination. Docket 17 at 78. On July 31, 2023, Spotted Bear wrote a letter to the Oglala Sioux Tribe Pine Ridge Law and Order Committee about her wrongful termination. Docket 11-1 at 23–25. She also wrote a letter to the

---

[1] Spotted Bear also appears to sue two members of tribal leadership because they did not follow the law, alleging that one was charged with driving under the influence and child endangerment and the other was charged with domestic battery. Docket 27 at 1. But Spotted Bear has not explained how these issues relate to her or her claims.

Oglala Sioux Tribal Law and Order Committee and Oglala Lakota Sioux Tribal Council about meeting with human resources. *Id.* at 120–22.

Spotted Bear sought review of her termination, but BIA staff allegedly did not forward her paperwork to Washington D.C. for investigation. Docket 31 at 1. Spotted Bear claims that the South Dakota Unemployment Office told her that the Oglala Sioux Tribe DOC did not have any evidence to deny her unemployment. Docket 1-1 at 2. Her request for benefits was allowed. Docket 7 at 49. Spotted Bear claims that she was unable to find employment because of defendants' actions, *see* Docket 18 at 5, but Spotted Bear filed documents showing that she was hired as a Security Officer with the Oglala Lakota Housing Authority Security Department on March 4, 2024. Docket 9 at 162.

### 2.    Property

Spotted Bear bought a fifth-wheel trailer with financial assistance from the Oglala Sioux Tribe. Docket 1-1 at 1. Her trailer was broken into five different times. *Id.* She was also gifted a Dodge Ram truck, but it was "torched to the ground[.]" *Id.* Spotted Bear reported concerns and gave statements to the Oglala Sioux Tribe Department of Public Safety about the break ins. *See generally* Docket 10.

### 3.    Legal Services

Spotted Bear sought legal assistance from Dakota Plains Legal Services (DPLS) to help her file suit against the Oglala Sioux Tribe. Docket 1-1 at 1. DPLS refused to help, and one staff member allegedly informed her that the Oglala Sioux Tribe is not a federally recognized tribe. *Id.* Spotted Bear alleges

that she had meetings scheduled with Lisa Adams Brewer at DPLS. Docket 7 at 38–39. Spotted Bear alleges that because Lisa is related to Veronica, Docket 1-1 at 1, Lisa refused to help in her lawsuit and had a conflict of interest from her relationship to Veronica and her prior employment as a judge with the Oglala Sioux Courthouse. *Id.*; Docket 11-1 at 125–27; Docket 24 at 2.

On November 20 or 21, 2023, Spotted Bear wrote a letter to Judge David Dillon of the Oglala Sioux Tribal Court because she believed that he was not receiving the documents she filed. Docket 1-1 at 1; Docket 7 at 68. Spotted Bear claims that she saw Judge Dillon at an Oglala Sioux Tribe Law and Order meeting, but he ignored her. Docket 1-1 at 1; Docket 24 at 2.

### 4.    Claims and Relief Requested

Spotted Bear does not specify if she sues defendants in their individual or official capacities. Because of defendants' actions, she lost her income of over $40,000 annually, her federal employment incentives, and her higher education. Docket 31 at 2. Spotted Bear seeks the following relief: (1) defendants clear her name locally and nationally; (2) defendants apologize; (3) defendants pay for her bills (including $950 in rent, $2,000 for car payment, and $3,000 to fix her car), hardships,[2] character assassination, and "for the fact [her] federal education to become professional development is destroyed[.]" Docket 18 at 3, 5. She also seeks $620,000 every year for life. *Id.* at 5; *see also* Docket 24 at 1.

---

[2] Spotted Bear alleges that the hardships she faced included homelessness and being blacklisted from employment with the Oglala Sioux Tribe. Docket 18 at 5.

### B.    Legal Background

When a district court determines a plaintiff is financially eligible to
proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then
determine whether the complaint should be dismissed under 28 U.S.C.
§ 1915(e)(2)(B). *See Martin-Trigona v. Stewart*, 691 F.2d 856, 857 (8th Cir.
1982) (per curiam); *see also Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D.
Ark. 2016). The court must dismiss a complaint if it "(i) is frivolous or
malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from such relief." 28 U.S.C.
§ 1915(e)(2)(B).

A court when screening under § 1915 must assume as true all facts well
pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir.
1995). Pro se and civil rights complaints must be liberally construed. *Erickson
v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *see also
Bediako v. Stein Mart, Inc.*, 35 F.3d 835, 839 (8th Cir. 2004) (citation omitted).
Even with this construction, "a *pro se* complaint must contain specific facts
supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir.
1985) (citation omitted); *see also Ellis v City of Minneapolis*, 518 F. App'x 502,
504 (8th Cir. 2013) (per curiam) (citation omitted).

A district court has the duty to examine a pro se complaint "to determine
if the allegations provide for relief on any possible theory." *Williams v. Willits*,
853 F.2d 586, 588 (8th Cir. 1988) (citing *Bramlet v. Wilson*, 495 F.2d 714, 716
(8th Cir. 1974)). A complaint "does not need detailed factual allegations . . .

[but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" *Id.* (citation and footnote omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 554–63)). If a complaint does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations).

### C.     Legal Analysis

#### 1.     Capacities

Spotted Bear does not specify if she sues defendants in their individual or official capacities, or both. *See generally* Docket 1. When the plaintiff does not specifically state in which capacity he or she sues the defendants, the Court must apply the course of proceedings test. *S.A.A. v. Geisler*, 127 F.4th 1133, 1138–39 (8th Cir. 2025) (en banc). "The fundamental question is whether the course of proceedings has put the defendant 'on notice that she was being sued in her individual capacity' and that 'her personal liability was at stake.' "

*Id.* at 1139 (quoting *Daskalea v. D.C.*, 227 F.3d 433, 448 (D.C. Cir. 2000)). "[T]he underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id.* (quoting *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). "Relevant factors include, but are not limited to, how early in the litigation the plaintiff first specified individual capacity claims, whether the plaintiff's complaint included a prayer for punitive damages, and whether the defendant declined to raise a qualified immunity defense." *Id.* The United States Court of Appeals for the Eighth Circuit noted that "[o]ur sister circuits can offer helpful guidance." *Id.* Sister circuits have also considered factors such as the nature of the plaintiff's claims and whether the complaint alleges that defendant acted in accordance with a government policy or custom. *Goodwin v. Summit Cnty.*, 703 F. App'x 379, 382 (6th Cir. 2017); *Biggs*, 66 F.3d at 61. "No single factor is dispositive in an assessment of the course of proceedings." *S.A.A.*, 127 F.4th at 1140 (quoting *Powell v. Alexander*, 391 F.3d 1, 22 (1st Cir. 2004)).

Here, the relief Spotted Bear seeks suggests that she intends to sue defendants in their individual and official capacities. Spotted Bear seeks injunctive relief and monetary damages. Docket 18 at 3, 5. Money damages are generally available on individual capacity claims, and equitable relief is typically available on official capacity claims. *Brown v Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citation omitted); *Abdulrazzak v. Smith*, 4:17-CV-04058-KES, 2018 WL 4625409, at *16 (D.S.D. Sept. 26, 2018) (citing *Pulliam v. Allen*, 466 U.S. 522, 541 (1984)), aff'd 708 F. App'x 48 (8th Cir. 2020).

The nature of Spotted Bear's claims also suggests that she alleges both individual and official capacity claims. Spotted Bear alleges claims under the Indian Civil Rights Act (ICRA), which does not allow a federal court to award money damages. *See* 25 U.S.C. § 1302; *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 64–67 (1978). Spotted Bear also alleges several claims against defendants in which she does not allege that they acted in accordance with a government policy or custom. Thus, this Court deems Spotted Bear's complaint to allege claims against defendants in their individual and official capacities.

### 2.    Title VII of the Civil Rights Act of 1964

Spotted Bear claims that her rights were violated under Title VII and cites to the Equal Employment Opportunity Commission's guidelines on discrimination because of sex, religion, and national origin (29 C.F.R. §§ 1604, 1605, and 1606). Docket 1 at 1. Thus, this Court liberally construes Spotted Bear's complaint to allege a wrongful termination claim for sex, religion, and national origin under Title VII of the Civil Rights Act of 1964. It is unclear who Spotted Bear specifically intended to sue under Title VII, but individual employees cannot be held liable under Title VII. *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994). Thus, Spotted Bear's claims against her supervisors, co-workers, and other staff in their individual capacities fail to state a claim upon which relief may be granted and are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

As to Spotted Bear's Title VII claims against her employer, it is unclear from her filings whether she is employed by the Oglala Sioux Tribe or the

United States Bureau of Indian Affairs. Spotted Bear may have been employed under a 638 self-determination contract. It is also unclear which defendants are employed by the Oglala Sioux Tribe and which are employed by the BIA. She mentions the existence of 638 contracts, but it is unclear who she believes is employed under the 638 contract. The term employer expressly excludes "an Indian tribe" under Title VII. *See also Ferguson v. SMSC Gaming Enter.*, 475 F. Supp. 2d 929, 931 (D. Minn. 2007) (collecting cases). But Title VII does apply to employees of the federal government. *See* 42 U.S.C. § 2000e-16. Thus, Spotted Bear's Title VII claims are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) because she has provided insufficient information to state a claim upon which relief may be granted. If she believes that her employer may be sued under Title VII, then she can file an amended complaint within **thirty days from the date of this Court's screening order** and include information sufficient to identify her employer and state a claim upon which relief may be granted.

### 3.    Breach of 638 Contract

In Spotted Bear's complaint, she alleges a "violation of contract 638[.]" Docket 1 at 1. In her amended complaint, she alleges abuse of 638 contract. Docket 18 at 1. This Court liberally construes her filings to allege a breach of a 638 contract claim. However, her claim is too vague. She generally references "Public Law 93-638 Law Enforcement services contract number CTH61T645F8[.]" Docket 29 at 15 (emphasis omitted). But she has not clearly pled how she believes a 638 contract was violated, what contract was violated,

who violated it, and whether she had any rights under the contract. Because Spotted Bear has alleged insufficient details for this Court to determine she has a breach of 638 contract claim, her breach of 638 contract claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 4. Treaty of Fort Laramie of 1851 and 1868

Spotted Bear claims that defendants neglected her rights as a "Full blood Ogallala/Oglala Lakota Sioux Tribal member . . . with in hand Treaty of Fort Laramie of 1851 and 1868[.]" Docket 1-1 at 1; *see also* Docket 7 at 68; Docket 27 at 1; Docket 29 at 28; Docket 31 at 2. The nature of Spotted Bear's treaty claims is unclear. In a supplement filed with this Court, Spotted Bear states that "[o]ur Oglala Sioux tribe is always asking the United States Government for Federal Funding; however, the High Poverty and Genocide rate continues on the Pine Ridge Indian reservation 344-U -- Treaty 1851 and 1868[.]" Docket 27 at 1; *see also* Docket 31 at 2 ("Because we are a Nation of the Great Tetuwan Sioux Treaty of Fort Laramie1851 is also violated."). Because Spotted Bear's filings do not clarify if she believes the United States or the Oglala Sioux Tribe has violated the treaties or how the treaties were violated, this Court need not determine at this time whether she can sue to enforce a duty of trust, loyalty, care, or honesty. *See Gilbert v. Weahkee*, 441 F. Supp. 3d 799, 812–14 (D.S.D. 2020), aff'd 830 F. App'x 496 (8th Cir. 2020); *Brown v. Haaland*, 604 F. Supp. 3d 1059, 1093 (D. Nev. 2022).

In Spotted Bear's filings, she submitted a document that was directed to the Oglala Sioux Tribe, United States Marshals, and all concerned, as well as a document filed in Oglala Sioux Tribal Court about the Bad Men provision in the 1868 Treaty of Fort Laramie. Docket 10 at 3, 10–11; *see also* Docket 24 at 1 (alleging deceptive practices, including "Treaty Agreement violation / Bad man clause"). It is unclear from Spotted Bear's filings who she is alleging violated the Bad Men provision. Because Spotted Bear has alleged insufficient facts to determine what, if any, provision of the 1851 and 1868 Treaty of Fort Laramie has been violated, and which, if any, defendant violated the treaties, Spotted Bear has alleged insufficient facts to state a claim upon which relief may be granted. *See Oglala Sioux Tribe v. United States*, 674 F. Supp. 3d 635, 657–66 (D.S.D. 2023) (analyzing the language of the treaties as to responsibilities for the bad men clauses). Thus, Spotted Bear's claims under the 1851 and 1868 Treaty of Fort Laramie are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5.    Indian Civil Rights Act

Spotted Bear alleges claims for violation of her rights under the Indian Civil Rights Act. Docket 1-1 at 1; Docket 18 at 1; Docket 24 at 1. "[T]he Supreme Court has held that the only federal relief available under the Indian Civil Rights Act is a writ of habeas corpus." *Goodface v. Grassrope*, 708 F.2d 335, 339 n.4 (8th Cir. 1983) (citing *Santa Clara Pueblo*, 436 U.S. 49). "Thus, actions seeking other sorts of relief for tribal deprivations of rights must be resolved through tribal forums." *Id.*; *see also Buxton v. United States*, 5:09-CV-

05057-JLV, 2011 WL 4528329, at *2 (D.S.D. Sept. 28, 2011) ("The Indian Civil Rights [A]ct, 25 U.S.C. § 1302 *et seq.*, does not provide a private cause of action for money damages." (citation omitted)). Spotted Bear seeks money damages and injunctive relief requiring defendants clear her name. Docket 18 at 3, 5. Because she does not seek a writ of habeas corpus, this Court does not have jurisdiction over Spotted Bear's claims under the Indian Civil Rights Act. Thus, Spotted Bear's claims under the Indian Civil Rights Act are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 6.    18 U.S.C. § 242

Spotted Bear alleges that defendants violated her rights under 18 U.S.C. § 242. Docket 1-1 at 1. However, 18 U.S.C. § 242 is a federal criminal statute, which does not provide a private right of action. *United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998). Thus, Spotted Bear's claim under 18 U.S.C. § 242 is dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 7.    Tort Claims

Spotted Bear sues defendants for wrongful termination, slander/character assassination, and falsification of documents. Docket 1 at 1. This Court liberally construes her complaint to allege tort claims for wrongful termination in violation of public policy, defamation, and fraudulent misrepresentation.

It is unclear if Spotted Bear's supervisors were employed by the United States or the Oglala Sioux Tribe. If Spotted Bear and her supervisors were

employed under a self-determination contract and considered employees of the United States, then her claims may fall under the Federal Tort Claims Act (FTCA).[3] *See Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 672 (8th Cir. 2008). However, exhaustion of an FTCA claim is a jurisdictional prerequisite. 28 U.S.C. § 2675(a). *See also Porter v. Fox*, 99 F.3d 271, 274 (8th Cir. 1996). Exhaustion requires that the plaintiff "shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." *Id.*

Here, Spotted Bear submitted as exhibits letters addressed to the United States Department of Justice and the United States Bureau of Indian Affairs, dated September 25, 2023. Docket 7 at 41–42. This Court is not aware of any information in the record indicating that she received a final disposition, if these letters were to be construed as a claim before the agency. Spotted Bear filed her complaint before this Court on February 7, 2024. Docket 1. Six

---

[3] "Tribal employees will be deemed employees of the Bureau of Indian Affairs ('BIA') for the purposes of the FTCA only when they are acting within the scope of their employment in carrying out the contract or agreement." *Dahlstrom v. United States*, 2019 U.S. Dist. LEXIS 190942, at *2 (W.D. Wash. Nov. 4, 2019) (citation modified), aff'd 858 F App'x 208 (9th Cir. 2021). "Because the party asserting jurisdiction bears the burden of establishing subject matter jurisdiction, a plaintiff in an FTCA suit must identify which contractual provisions the alleged tortfeasor was carrying out at the time of the tort." *Id.* (citation modified). Spotted Bear has not clearly indicated whether defendants were acting under a contract or agreement with the United States.

months from the presumed sending of her letter would have been March 25, 2024. Thus, even if defendants are employees of a United States agency, Spotted Bear has not alleged any facts showing that she exhausted her remedies before filing her claim. Her FTCA claim is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).[4]

To the extent that Spotted Bear alleges any tort claims arising under state-law that do not fall within the FTCA, this Court does not have original jurisdiction over such claims. Because the tort claims would arise under state law, Spotted Bear has not shown federal question jurisdiction. 28 U.S.C. § 1331. Spotted Bear also has not shown that diversity jurisdiction exists. Diversity jurisdiction exists when the parties are completely diverse, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (citation omitted). Spotted Bear, the party seeking a federal forum, bears the burden of demonstrating that the parties are citizens of different states. *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th

---

[4] FTCA claims can only be brought against the United States. 28 U.S.C. § 1346(b)(1); *Duncan v. Dep't of Lab.*, 313 F.3d 445, 447 (8th Cir. 2002) (per curiam). Thus, if Spotted Bear has exhausted her FTCA claim, the United States would be the proper defendant. It is unclear if any of the defendants she sues are also employed under a 638 contract, such that an official capacity claim against them would be construed as an official capacity claim against the United States, even if liberally construed. Further, because Spotted Bear has alleged insufficient facts to allege an FTCA claim, this Court does not consider at this time whether the conduct alleged falls within the discretionary function exception. *See Hinsley*, 516 F.3d at 672; *Miller v. United States*, 992 F.3d 878, 886 (9th Cir. 2021); *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000).

Cir. 1992). Spotted Bear has not alleged that complete diversity exists. Thus, she has not alleged diversity jurisdiction.

Although there are some exceptions, in an action where the district courts have original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Unless Spotted Bear amends her complaint to allege a related federal claim that survives screening, this Court declines to exercise supplemental jurisdiction over Spotted Bear's state-law claims.

### 8.   Claims Against Judge Dillon

Spotted Bear claims that Oglala Sioux Tribal Court Judge Dillon did not receive her documents and blew her off at an Oglala Sioux Tribal Law and Order committee meeting. Docket 1-1 at 1; *see also* Docket 7 at 68–70 (containing her letter to Judge Dillon describing conflicts of interest in her cases in tribal court); Docket 24 at 2 ("David Dillion Chief Judge of the Oglala Sioux tribe Neglected to talk to me after a OST tribal Meeting in front of the tribal leaders, his remarks are, 'you have to file in court, my reply is I did, ' he Walk away from me."). She claims that the court did not correct the injustice she suffered. Docket 1-1 at 1. Thus, Spotted Bear's claims against Judge Dillon

appear to stem from his decisions in her case in tribal court and from his decision to not give legal advice to her or have *ex parte* communications with her once she informed him that she filed a suit in tribal court.

It is not clear what, if any, constitutional or federal claims Spotted Bear alleges against Judge Dillon. But even if she had alleged a claim, his actions all appear to stem from judicial action in his role as a judge. Spotted Bear does not appear to seek any injunctive or declaratory relief related to her actions in tribal court. She is unable to pursue claims against Judge Dillon in his individual capacity for money damages for judicial actions because "a tribal court judge is entitled to the same absolute judicial immunity that shields state and federal court judges." *Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003). Judicial immunity applies unless the action was nonjudicial or taken in the absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). Spotted Bear has not alleged that any action by Judge Dillon was nonjudicial or taken in the absence of jurisdiction. Thus, even if Spotted Bear had alleged a claim against Judge Dillon, it would likely be barred under judicial immunity. Therefore, Spotted Bear's claims against Judge Dillon are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.    Motion to Add Defendant (Docket 34)

On January 23, 2025, Spotted Bear filed a motion to add Gina Douville—also known as Gina Whirlwind Horse—as a defendant. Docket 34 at 1. However, Spotted Bear's motion to add a defendant does not clearly describe

any events or actions by Douville that violated her constitutional rights. *See generally id.* This Court liberally construes Spotted Bear's filing as a motion to amend her complaint. Under Federal Rule of Civil Procedure 15(a), a party may amend a pleading once as a matter of course, but "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1–2). Spotted Bear has filed an amended complaint. Docket 18. Further, according to this Court's local rules that were effective at the time that Spotted Bear filed her motion, "any party moving to amend a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so that they may be easily identified." D.S.D. Civ. LR 15.1. Because Spotted Bear did not comply with this Court's local rules by providing a proposed amended complaint and she did not clearly identify any claims she seeks to bring against Douville, Spotted Bear's motion to amend to add a defendant, Docket 34, is denied. Spotted Bear is not precluded from filing an amended complaint naming Douville as a defendant, but she must comply with this Court's local rules and the Federal Rules of Civil Procedure.

### III.    Motion to Supplement (Docket 36)

On March 7, 2025, Spotted Bear filed a "motion to excerpt," to add documents about her mental health treatment occurring after she filed her original and supplemental complaints. Dockets 36, 36-1. Supplemental pleadings "deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings." 6A *Wright &*

*Miller's Federal Practice & Procedure* § 1504 (3d ed. 2025). Thus, this Court liberally construes Spotted Bear's filing as a motion to supplement her complaint. Docket 36.

However, she has not complied with the District of South Dakota's Local Rules. This Court's Local Rules were updated on February 28, 2025. Local Rule 15.1 requires that "any party moving to amend or supplement a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so that they may be easily identified." D.S.D. Civ. LR. 15.1. Although Spotted Bear submitted the pages she wants to add to her complaint, she has not included a proposed copy of her complaint with the changes supplemented or underlined. Thus, Spotted Bear's motion to supplement (Docket 36) is denied without prejudice.

## IV.    Conclusion

Thus, it is ORDERED:

1.    That Spotted Bear's claims are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

2.    That Spotted Bear has **thirty days from the date of this Court's screening order** to file an amended complaint that complies with the Federal Rules of Civil Procedure and this Court's Local Rules. Failure to do so will result in the dismissal of Spotted Bear's complaint without prejudice for failure to prosecute.

3.    The Clerk of Court shall send Spotted Bear a civil complaint packet.

4.    That Spotted Bear's motion to add defendant, Docket 34, is denied.

5.      That Spotted Bear's motion to supplement, Docket 36, is denied.

Dated August 6, 2025.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE