UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| JOANN SPOTTED BEAR, a/k/a Mato Gleska Weyen,<br><br>Plaintiff,<br><br>vs.<br><br>OGLALA SIOUX TRIBE, et al.,<br><br>Defendants. | 5:24-CV-05009-CCT<br><br>**1915 SCREENING OF SECOND AMENDED COMPLAINT** |

Plaintiff, Joann Spotted Bear, filed a pro se civil rights lawsuit. Docket 1. Spotted Bear moved for leave to proceed in forma pauperis, which this Court granted. Docket 32. Spotted Bear filed an amended complaint, Docket 18, and eighteen supplements to her complaint, Dockets 7, 8, 9, 10, 11, 12, 14, 17, 19, 20, 21, 22, 24, 25, 27, 28, 29, 31. In accordance with 28 U.S.C. § 1915(e)(2)(B), the Court screened Spotted Bear's amended complaint and supplements. *See generally* Docket 39. Although Spotted Bear's filings were "disjointed, duplicative, and voluminous[,]" the Court explained that it had attempted "to address all the claims and causes of action alleged . . . in the over 1,600 pages of filings[.]" *Id.* at 2. The screening order outlined Spotted Bear's factual allegations. *Id.* at 4–9. On screening, the Court dismissed Spotted Bear's claims without prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii). *Id.* at 23. However, the Court granted Spotted Bear leave to file a second amended complaint that complies with the

Federal Rules of Civil Procedure and the District of South Dakota's Local Civil Rules. *Id.* at 2–3, 23. The Court cautioned that "an amended complaint would replace Spotted Bear's previously filed complaints and supplements, and all claims that Spotted Bear seeks to bring must be included in an amended complaint." *Id.* at 3. Spotted Bear filed two motions for extension of time to file a second amended complaint, both of which this Court granted. Dockets 41, 42, 43, 44. Spotted Bear timely filed a second amended complaint. Docket 45. The Court now screens Spotted Bear's second amended complaint.

## I. 1915 Screening

### A. Legal Standard

The Court's initial screening order, Docket 39 at 10–11, sets out the legal standard for screening a complaint under § 1915(e)(2)(B). The Court will apply this standard when screening Spotted Bear's second amended complaint.

### B. Factual Background as Alleged by Spotted Bear

Spotted Bear's second amended complaint appears to restate some, but not all, of the factual allegations contained in her previous filings. *See generally* Docket 45. However, when the Court granted Spotted Bear leave to file a second amended complaint, the Court specifically warned that an amended complaint would replace her previous complaints and supplements and directed that she must include all claims that she seeks to bring in any amended complaint that she filed. Docket 39 at 3. Thus, the Court will confine its screening of Spotted Bear's second amended complaint to the factual allegations set forth in her second amended complaint.

Spotted Bear and others went to Artesia, New Mexico, for training and stayed for one night. Docket 45 at 14. Veronica Brewer picked up Spotted Bear and the others in her training group in Artesia because they "were not thoroughly done with a federal background check and everyone from Pine Ridge had to go home." *Id.* at 10. Spotted Bear contends that she should not have been required to go to Artesia, New Mexico, for training, but was required to go because of "crossfire between the United States Government and the Oglala Sioux Tribe on lack of background checks[.]" *Id.* at 14. Spotted Bear contends that she had been on the job for fifteen months and was employed full time. *Id.* at 10. After leaving Artesia, Spotted Bear and others in her training group stayed at the Quality Inn in Limon, Colorado. *Id.* at 14.

After picking up Spotted Bear and six others in Artesia, New Mexico, Veronica Brewer made harassing and intimidating statements directed at Spotted Bear. *Id.* at 10–11. Spotted Bear alleges these statements created a hostile environment. *Id.* at 11. Sergeant Cross; Jean Whirlwind Horse, who is the Captain of the Pine Ridge Oglala Sioux Tribe Adult Correctional Facility; Michelle Poor Bear, the Oglala Sioux Tribe 638 contract human resource officer; Johnanna Dreamer, the Oglala Sioux Tribe Chief of Staff; and Dakota High Hawk, the executive assistant to Chief Executive Officer of the Oglala Sioux Tribe, tolerate and accept the kind of harassing and intimidating behavior allegedly exhibited by Brewer. *Id.* at 2, 11.

In her second amended complaint, Spotted Bear alleges that she was sitting at a McDonald's in Sidney, Nebraska, and decided to call law

enforcement to seek assistance after a discussion with others in the restaurant. *Id.* at 7. But the second amended complaint does not allege any facts describing when, why, or how Spotted Bear ended up at this McDonald's. *See generally id.* Officers from Cheyenne County and Morrill County responded to Spotted Bear's call and took her to Alliance, Nebraska. *Id.* at 7. A deputy in Alliance and "church people" then took Spotted Bear back to Pine Ridge, South Dakota. *Id.* According to Spotted Bear, she "could have died, and [her] own Supervisor and Captain of the Oglala Sioux Tribe Correctional facility did NOT care weather [sic] [she] lived or died." *Id.* (emphasis in original). But the second amended complaint does not include any facts alleging how or why Spotted Bear's supervisor and the captain of the Oglala Sioux Tribe Correctional facility are responsible for her being at the McDonald's in Sidney, Nebraska.[1] *See generally id.*

Liberally construing Spotted Bear's second amended complaint, it appears that her claims arise out of the termination of her employment as a correctional officer at the Pine Ridge Indian Reservation. *Id.* at 12. But the second amended complaint does not allege why Spotted Bear was terminated. *See generally id.* It appears that the "corruption" surrounding her termination was reviewed by the Law and Order committee of the Oglala Sioux Tribe, but

[1] In the second amended complaint, Spotted Bear contends that the twenty-one representatives of the Oglala Sioux Tribal Council should "be held accountable for excepting Slander in the Federal Police Force of the Oglala Sioux Tribal Correctional officer and allowing [her] to walk over approximately 158 miles back to Pine Ridge South Dakota and not giving a (Dag Nabitt) if [she] die[s] or NOT!" Docket 45 at 12 (capitalization and grammatical errors in original) (emphasis in original).

"Oglala Sioux Tribal Judge David Dillion[,] did not want to hear anything at all[.]" *Id.* at 11. Spotted Bear alleges that over twenty-five employees of the Oglala Sioux Tribe lied about her as a federal correctional officer. *Id.* at 15. Spotted Bear states that the "South Dakota Labor commission statement of letter made it clear all accusations made of the allegations have no evidence[]" and indicates that she received unemployment. *Id.* at 5, 15. Kevin Cross, a sergeant with the Oglala Sioux Tribe Department of Corrections, informed Spotted Bear that "they had no real reason to fire [her.]" *Id.* at 2, 5–6. According to Spotted Bear, Robert Tapio, an Oglala Lakota Tribal Council Representative, stated that the Tribe had "railroaded" and "blacklisted" her. *Id.* at 3, 4.

Spotted Bear alleges that her fifth wheel trailer was broken into eight times, a fan was stolen, and her Dodge Ram truck was burned to the ground. *Id.* at 7. But Spotted Bear does not allege that any of the defendants are responsible for these actions or otherwise explain how these allegations are related to her claims. *See generally id.* Spotted Bear's second amended complaint identifies Chief Align Young of the Oglala Sioux Tribe Department of Public Safety and states that he "stated he never got a police report, [Spotted Bear] hand delivered 1 to him." *Id.* at 3 (emphasis in original omitted). Spotted Bear does not allege that the police report she contends she provided to Chief Young relates the break-ins of her fifth wheel trailer or burning of her truck, but even if she had, Spotted Bear does not allege any plausible claims against Chief Young. *See generally Doe v. Anoka Cnty.*, 186 F.4th 526, 531–33 (8th Cir.

2026) (recognizing that crime victims generally lack standing to bring failure-to-investigate claims against law enforcement officers).

As relief, Spotted Bear seeks money damages, including lost pay and benefits. Docket 45 at 12, 13–14. She also requests that the Court "honor the treaty and make the Oglala Sioux Tribe reinstate good faith in [her] name as a Federal worker[.]" *Id.* at 12. She seeks review of the actions of certain defendants (Brewer, Cross, Whirlwind Horse, Poor Bear, High Hawk, and Dreamer) because of "neglect of Treaty and abuse of Federal documents[.]" *Id.* Finally, with respect to Chief Judge Dillion, Spotted Bear requests that he be "held at the highest degrade of negligence of Treaty obligations and, Under Civil Rights case (imbler v. Pachtman, . . . ) be reliable at the highest level of the badman clause. Treaty of Fort Laramie 1951-and 1868." *Id.* (capitalization and grammatical errors in original).

Spotted Bear identifies "[w]rongful termination/slander/defamation of character/abuse of Federal documentation abuse/Treaty neglect Fort Laramie 1851-1868 Bad man clause/United States of America constitutional rights[]" as grounds for filing in federal court. *Id.* at 5.

**C. Legal Analysis**

**1. Title VII of the Civil Rights Act of 1964**

The second amended complaint alleges liability for harassment under Title VII and cites to the Equal Employment Opportunity Commission's guidelines on discrimination because of sex, religion, and national origin (29 C.F.R. §§ 1604, 1605, and 1606). Docket 45 at 13. As this Court noted in the

initial screening order, individual employees cannot be held liable under Title VII. Docket 39 at 13. Thus, Spotted Bear's claims against her supervisors, co-workers, and other staff in their individual capacities fail to state a claim upon which relief may be granted and are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

The second amended complaint seems to allege that Spotted Bear was employed by the Oglala Sioux Tribe, but like her previous filings she again mentions the existence of 638 contracts, but does not clarify who she believes may be employed under a 638 contract. *See generally* Docket 45. Because Spotted Bear does not allege that she was an employee of the federal government, her Title VII claim is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

But even if Spotted Bear had alleged that she was a federal government employee, she has not plausibly alleged a Title VII claim. Title VII was not intended to establish a code of civility in the workplace. *Wallin v. Minn. Dep't of Corrs.*, 153 F.3d 681, 688 (8th Cir. 1998). "Conduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law." *Watt v. Brennan*, No. 4:14-CV-1473 CAS, 2015 WL 5735226, at *15 (E.D. Mo. Sep. 25, 2015) (quoting *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003)). Title VII prohibits an employer from subjecting its employees to a hostile work environment "because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). To establish a hostile work environment claim, a plaintiff must establish that she is a member of a

protected class, that she was exposed to unwelcome harassment, that the harassment was based a protected characteristic of the plaintiff, that the harassment affected a term, condition, or privilege of employment, and that the employer knew or should have known about the harassing behavior, but failed to take appropriate action to alleviate it. *Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 978 (8th Cir. 2006) (citation omitted). Here, Spotted Bear alleges that Brewer made harassing and intimidating statements directed toward her that made Spotted Bear cry to herself. Docket 45 at 11. But Spotted Bear does not allege that these harassing and intimidating statements were based on a protected characteristic under Title VII. *Id.* Thus, Spotted Bear has not pleaded a viable hostile environment claim under Title VII.

### 2. Treaty of Fort Laramie of 1851 and 1868

Spotted Bear states that she seeks to recover for "Treaty neglect Fort Laramie 1851-1868 Bad man clause[.]" *Id.* at 5. Spotted Bear's second amended complaint does not clarify the nature of her treaty claims. *See generally id.* "A treaty, including one between the United States and an Indian tribe, is essentially a contract between two sovereign nations." *Washington v. Wash. State Com. Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 675, *modified sub nom. Washington v. United States*, 444 U.S. 816 (1979). "As a general rule, . . . Indian treaties grant (or reserve) rights to tribes, not to individuals." *Fond du Lac Band of Lake Superior Chippewa v. Cummins*, 657 F. Supp. 3d 1202, 1206 (D. Minn. 2023) (citations omitted). Here, however, as the Court understands it, Spotted Bear does not allege that the United States has

violated the Treaties of Fort Laramie. Instead, she contends that other Tribe members, Tribal leadership, and perhaps the Tribe itself has violated unspecified provisions of the 1851 and 1868 Treaties of Fort Laramie. Because Spotted Bear has alleged insufficient facts to determine which provisions, if any, of the 1851 and 1868 Treaty of Fort Laramie have been violated, and which, if any, defendants violated the treaties, Spotted Bear has alleged insufficient facts to state a claim upon which relief may be granted. *See Oglala Sioux Tribe v. United States*, 674 F. Supp. 3d 635, 657–66 (D.S.D. 2023) (analyzing the language of the treaties as to responsibilities for the bad men clauses). Thus, Spotted Bear's claims under the 1851 and 1868 Treaties of Fort Laramie are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

**3. Federal Criminal Statutes**

Spotted Bear's second amended complaint appears to allege violations of two federal criminal statutes: 18 U.S.C. §§ 152(9) and 242. *See* Docket 45 at 13, 16. As the Court explained in its initial screening order, 18 U.S.C. § 242 is a federal criminal statute, which does not provide a private right of action. *United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998); Docket 39 at 17. In her previous filings, Spotted Bear did not allege a violation of § 152(9), but even assuming that this federal criminal statute gives rise to a private cause of action, the statute criminalizes certain conduct by a Chapter 11 bankruptcy debtor and is wholly inapplicable based on the facts alleged in Spotted Bear's second amended complaint. Thus, Spotted Bear's claims under 18 U.S.C.

§§ 152(9) and 242 are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

**4. Tort Claims**

Spotted Bear sues defendants for "[w]rongful termination/ slander/defamation of character/abuse of Federal documentation[.]" Docket 45 at 5. It remains unclear whether Spotted Bear's supervisors were employed by the United States or the Oglala Sioux Tribe. If Spotted Bear and her supervisors were employed under a self-determination contract and considered employees of the United States, then her claims may fall under the Federal Tort Claims Act (FTCA).[2] *See Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 672 (8th Cir. 2008). "Presentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant." *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993); *see also* 28 U.S.C. § 2675(a). Because the second amended complaint does not allege that Spotted Bear presented any of her claims to an appropriate agency, Spotted Bear has failed to state a claim under the FTCA.

[2] "Tribal employees will be deemed employees of the Bureau of Indian Affairs ('BIA') for the purposes of the FTCA only when they are acting within the scope of their employment in carrying out the contract or agreement." *Dahlstrom v. United States*, No. C16-1874RSL, 2019 U.S. Dist. LEXIS 190942, at *2 (W.D. Wash. Nov. 4, 2019) (citation omitted), *aff'd*, 858 F. App'x 208 (9th Cir. 2021). "Because the party asserting jurisdiction bears the burden of establishing subject matter jurisdiction, a plaintiff in an FTCA suit must identify which contractual provisions the alleged tortfeasor was carrying out at the time of the tort." *Id.* (citation modified). Spotted Bear has not clearly indicated whether defendants were acting under a contract or agreement with the United States.

To the extent that Spotted Bear alleges any tort claims arising under state law that do not fall within the FTCA, this Court does not have original jurisdiction over such claims. Because the tort claims would arise under state law, these claims do not fall within the scope of federal jurisdiction under 28 U.S.C. § 1331. Spotted Bear also has not shown that diversity jurisdiction exists. Diversity jurisdiction exists when the parties are completely diverse, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (citation omitted). Spotted Bear, the party seeking a federal forum, bears the burden of demonstrating that the parties are citizens of different states. *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992). Spotted Bear has not alleged that complete diversity exists. Thus, she has not alleged diversity jurisdiction.

Although there are some exceptions, in an action where the district courts have original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Because Spotted Bear's second amended

complaint does not allege a cognizable federal claim, this Court declines to exercise supplemental jurisdiction over Spotted Bear's state-law claims.

**5. Claims Against Judge Dillion**

Spotted Bear appears to raise claims against Oglala Sioux Tribal Court Judge Dillion that mirror the claims she raised against Judge Dillion in her previous filings. *Compare* Docket 45 at 3, 11, 12, *with* Docket 1-1 at 1; Docket 7 at 68–70; Docket 24 at 2. In its initial screening order, the Court determined that Spotted Bear's claims against Judge Dillion are barred under judicial immunity. Docket 39 at 20–21. For the same reasons, Judge Dillion is entitled to judicial immunity for any claims Spotted Bear asserts against him in the second amended complaint.

For all of these reasons, the Court finds that Spotted Bear's second amended complaint, Docket 45, fails to state a claim upon which relief can be granted, and the second amended complaint is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Remaining Motions

Spotted Bear moves for leave to proceed in forma pauperis. Docket 46. But the Court has previously granted Spotted Bear leave to proceed in forma pauperis. Docket 32 at 2. Thus, Spotted Bear's second motion for leave to proceed in forma pauperis, Docket 46, is denied as moot.

Spotted Bear also moves for appointment of counsel. Docket 47. Because none of the claims in Spotted Bear's second amended complaint survive

screening, Spotted Bear's motion for appointment of counsel, Docket 47, is denied as moot.[3]

## III. Conclusion

Thus, it is ORDERED:

1. That Spotted Bear's second amended complaint is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).
2. That Spotted Bear's second motion for leave to proceed in forma pauperis, Docket 46, is denied as moot.
3. That Spotted Bear's fourth motion for appointment of counsel, Docket 47, is denied as moot.

Dated September 23, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

[3] Spotted Bear has filed three previous motions for appointment of counsel, Dockets 2, 16, and 33, all of which this Court denied, Docket 37.